## SCOTT v. BOARD OF COUNTY COM'RS OF MUSKOGEE COUNTY et al.

No. 14817—Opinion Filed May 7, 1924.

Rehearing Denied June 24, 1924.

**1. Counties—Taxation—Discovery of Omitted Property—Exclusive Contract With Tax Ferret—Invalidity.**

A board of county commissioners, in contracting with any person under section 9798, Comp. Stat. 1921, to assist the proper officers of the county in the discovery of property not listed and assessed as required by law, is not authorized to enter into an exclusive contract with such person, and where such contract is by its terms exclusive, it is to that extent void and not binding upon such board or their successors in office.

**2. Same.**

A board of county commissioners in contracting under section 9798, Comp. Stat. 1921, with any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed as required by law, is exercising governmental power expressly conferred by statute, and such board cannot so contract as to destroy or impair its power to contract with any additional person or persons to perform similar services when in the judgment of such board such additional services are necessary to discover such omitted property.

(Syllabus by Ray, C.)

Error from District Court, Muskogee County; O. H. Searcy, Judge.

Action by W. G. Scott against Board of County Commissioners of Muskogee County and others. Judgment for defendants and plaintiff appeals. Affirmed.

R. W. Stoutz and Harry G. Davis, for plaintiff in error.

Wm. A. Green, Co. Atty., Stone, Moon, & Stewart, and McPherren & Wilson, for defendants in error.

Robertson & Harmon, for W. F. Blakemore.

Opinion by RAY, C. The facts alleged in petition necessary to an understanding of the questions presented are these: January 2, 1923, the board of county commissioners of Muskogee county employed the plaintiff as tax ferret for a period of two years. August 7, 1923, they employed the defendant W. F. Blakemore as tax ferret for a period of one year from that day. The plaintiff, contending that this contract with the board of commissioners was an exclusive contract and, for that reason, the board of commissioners had no power or authority to employ any other person to act as tax ferret during the time of his employment, commenced this suit to enjoin Blakemore from acting, and to enjoin the county commissioners, county clerk, and county treasurer from in any way recognizing him as such or paying him, or allowing his claims, for services performed as tax ferret, and for an accounting of the fees and compensation earned by or paid to him, and for judgment for whatever amount the accounting showed had been earned or collected by Blakemore as tax ferret for that county. The terms of office of all the commissioners expired July 1st, following the employment of plaintiff. Two of the old members of the board had been re-elected with one new member. The employment of Blakemore was by the new board which took office on the first Monday in July, 1923. The material part of plaintiff's contract is as follows:

"The terms of this contract are to extend for a period of two years from this day, January 2, 1923, and said W. G. Scott compensation is fixed at 15 per cent. of all taxes reported and collected as the result of labor. Said compensation is to be paid to W. G. Scott as the law directs in the premises, after the collection of any such tax. It is further agreed that said W. G. Scott shall conduct all necessary investigations and litigations at his own expense and that the board

of county commissioners shall not make a similar contract with any party or parties except Sam D. Rose for the discovery of omitted properties in this county during the life of this contract. * * *"

The employment of plaintiff, and, subsequently, of Blackmore, was under section 9798, Comp. Stat. 1921, which is as follows:

"The board of county commissioners of any county in this state may contract with any persons to assist the proper officers of the county in the discovery of property not listed and assessed, as required by existing laws, and fix the compensation at not to exceed fifteen per cent. of the taxes recovered under this article. Before listing and assessing the property discovered, the county treasurer shall give the person in whose name it is proposed to assess the same, ten days' notice therefor by registered letter addressed to him at his last known place of residence, fixing the time and place when objections in writing to such proposed listing and assessment may be made. An appeal may be taken to the county court for the final action of the treasurer within ten days, by giving notice thereof in writing and filing an appeal bond, as in cases appealed from the board of county commissioners to the district court."

It is contended by the defendants that this statute does not authorize a board of county commissioners to enter into an exclusive contract extending beyond their term of office and binding upon them and their successors in office.

"It is a settled rule of construction that the grant of powers to a board of county commissioners must be strictly construed and that such board, when acting under specific authority, must act strictly on the conditions under which the authority is given, and exercise only such powers as are specifically granted, or as are incidentally necessary for the purpose of carrying into effect such powers." Allen et al. v. Commissioners of Pittsburg County, 28 Okla. 773, 116 Pac. 175.

"A board of county commissioners can exercise such powers only as are conferred upon it by the Constitution or the statutes, or such as may arise by necessary implication from an express grant." Tulsa St. Ry. Co. v. State. 26 Okla. 559, 110 Pac. 373.

"The board of county commissioners cannot make a binding contract with any one to perform any service for the county which contract is not specifically authorized by law or necessarily incidental to the performance of some duty specifically lodged by law in the board of county commissioners." Jackson v. Board of County Commissioners of Garvin County, 66 Okla. 75, 167 Pac. 227.

The section under which these contracts

were entered into by the board of county commissioners is identical with section 1 of the act of 1908, which it repealed, except as to the amount of compensation authorized to be paid. The old act has been construed by this court. In Kramer v. Gypsy Oil Co., 68 Okla. 212, 173 Pac. 359, in the opinion of the court on rehearing, it was said:

"By the statutes now under consideration the purpose of the Legislature was to provide laws for the collection of taxes on omitted property and create agencies for carrying these laws into effect."

In Wolverton Hardware Co. v. Porter, 61 Okla. 171, 160 Pac. 906, it was said:

"The object of the statute is to discover omitted property, and this is the entire scope and purpose contemplated by the act."

The object of the law was not to authorize the board of commissioners to employ a tax ferret, but to discover property omitted from the tax rolls, the appointment of the tax ferret being the means for carrying out that purpose. The authority to employ a tax ferret was incidental to the main purpose, that of getting the omitted property on the tax roll. For that purpose they were given authority to contract with "any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed as required by existing law." When the Legislature authorized and empowered the board of county commissioners to contract with "any person or persons," without placing any limitation upon the number of persons, it is clear that the intention was to authorize and empower such board to contract with such number of persons as deemed necessary to furnish all necessary assistance to the proper county officers in placing omitted property on the tax rolls. The statute specifically confers upon the board of commissioners the power to contract with more than one person to aid the officers in placing omitted property on the tax roll. The contracting parties in this case so recognized in providing "that the board of county commissioners shall not make a similar contract with any other party or parties except Sam D. Rose for the discovery of omitted properties in this county during the life of this contract * * * It it in this clause that the exclusive feature of the contract lies. It is not in terms exclusive but is so in effect. While it recognizes the rights of the commissioners to contract with another person for the same purpose, it seeks to limit that right and power to contracting with a particular person named. It seeks to limit that power of selection and contract to one person while the

clear intention of the Legislature was to empower the board to select any number of persons deemed necessary by them to accomplish the purpose of the enactment of this law—that is, to place omitted property upon the tax roll. The effect of this clause in the contract, if valid, would be to place the power of any subsequent selection in the hands of the plaintiff instead of leaving that power in the hands of the commissioners as contemplated by the statute. The delegation of this right of selection clearly is not contemplated by the statute. The person named, Sam D. Rose, is not a party to the contract and does not agree to act if he should subsequently be selected. It is conceivable that at the time the contract was entered into that Rose would accept the selection, or that one person would be sufficient to place all the omitted property in Muskogee county upon the tax roll, while subsequent developments would prove one person insufficient. It is apparent from the petition and the contention of the plaintiff that such condition did arise, for it is alleged that the plaintiff has employed other persons to assist him in the work, and that the work and interests of the plaintiff and his employes, on the one hand, and that of Bradfield on the other, are conflicting and detrimental to the taxpayers and to the public interest. In this the plaintiff is contending that he, and not the commissioners, has the right and power to employ these additional persons. If that be upheld the effect would be to confer upon the plaintiff, not a public official, the right and power to exercise that governmental function belonging to and expressly conferred upon the board of commissioners. The effect would be the delegation, beyond power of recall, of an official function to a private individual. We think no such power was conferred by the statute. Plaintiff contends that they had such power, but cites no authority to support his contention, but calls attention to the conditions which would exist if the board of county commissioners in building a courthouse should employ competing architects and contractors to act in opposition to each other. Such case would present an entirely different question. There is a clear distinction between the two cases. In the case of Omaha Water Co. v. City of Omaha, 147 Fed. 1, the distinction between the two classes of powers exercised by municipalities is clearly pointed out in this language:

"A city has two classes of powers, the one legislative or governmental, by virtue of which it controls its people as their sovereign, the other proprietary or business, by means of which it acts and contracts for

the private advantage of the inhabitants of the city and of the city itself. In the exercise of powers which are strictly governmental or legislative the officers of a city are trustees for the public and they may make no grant or contract which will bind the municipality beyond the terms of their offices because they may not lawfully circumscribe the legislative powers of their successors. But in the exercise of the business powers of a city, the municipality and its officers are controlled by no such rule and they may lawfully exercise these powers in the same way and in their exercise the city will be governed by the same rules which control a private individual or a business corporation under like circumstances."

A board of commissioners likewise has two classes of powers. Governmental power is expressly conferred by the statute under which these contracts were made. In the construction of a courthouse, or other similar transactions in the exercise of its business powers, such powers are exercised in the same way and governed by the same rules which control in ordinary business affairs; but in the exercise of governmental powers in providing revenue for governmental purposes, no such rules obtain, and it is beyond the power of such board to so contract as to destroy or impair that necessary governmental power expressly conferred by statute. Having reached the conclusion that it was beyond the power of the board of commissioners to so contract with the plaintiffs as to deprive such board of the power to contract with other persons to aid in discovering omitted property, it necessarily follows that the petition does not state a cause of action and the demurrer to the petition was properly sustained.

The judgment should be affirmed.

By the Court: It is so ordered.